EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Administración de Terrenos de Puerto Rico Peticionaria v. Ponce Bayland Enterprises, Inc. Recurrida | Certiorari 2021 TSPR 91 207 DPR ____ |
|---|---|

Número del Caso: CC-2019-212

Fecha: 29 de junio de 2021

Tribunal de Apelaciones:

Panel IX

Abogados de la parte peticionaria:

Lcdo. Carlos E. Cardona Fernández
Lcda. Evelyn Meléndez Figueroa

Abogados de la parte recurrida:

Lcda. Cynthia Torres Torres
Lcdo. John Ferré Crossley

Materia: Expropiación forzosa-La Sala de Expropiaciones del Tribunal de Primera Instancia tiene jurisdicción para considerar evidencia sobre contaminación ambiental y sobre los costos de remediarla en pleitos de expropiación forzosa para determinar el valor en el mercado de la propiedad expropiada al momento de la incautación. La admisibilidad de la evidencia sobre contaminación y los costos de remediarla está sujeta a lo dispuesto en las Reglas de Evidencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos de
Puerto Rico

      Peticionaria

          v.                     CC-2019-0212

Ponce Bayland Enterprises,
Inc.

      Recurrida

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 29 de junio de 2021.

Nos corresponde determinar si la Sala de Expropiaciones del Tribunal de Primera Instancia tiene jurisdicción para considerar evidencia sobre la presencia de contaminantes en la propiedad expropiada y sobre los costos de remediar esa contaminación. De contestar lo anterior en la afirmativa, debemos resolver si esa evidencia es admisible en pleitos de expropiación forzosa o si existen otras consideraciones que exigen excluirla de estos procesos.

Veamos los hechos que originaron esta controversia.

I

El 27 de octubre de 2006 la Administración de Terrenos de Puerto Rico (Administración) presentó una

petición de expropiación forzosa para adquirir una parcela de terreno en el Barrio Playa del Municipio de Ponce.[1] El propósito de la expropiación era desarrollar el Puerto de las Américas. Simultáneamente, la Administración depositó $2,300,000 en la Secretaría del Tribunal de Primera Instancia de San Juan, cantidad que estimó justa y razonable para adquirir la propiedad.[2] En la *Petición*, se denominó a Ponce Bay Land Enterprises, Inc. (Parte con Interés) –dueño de la propiedad– como la única parte con interés.

De igual manera, la Administración presentó una *Declaración para la Adquisición y Entrega Material de la Propiedad* (Declaración),[3] según permite la Sección 5(a) de la Ley de Expropiación Forzosa del 12 de marzo de 1903, 32 LPRA sec. 2907, según enmendada (Ley de Expropiación Forzosa), y la Regla 58.3 de Procedimiento Civil, 32 LPRA Ap. V. En consecuencia, y según contemplan las disposiciones antes citadas, el 8 de noviembre de 2006 el Tribunal de Primera Instancia emitió una *Resolución* en la cual reconoció a la Administración como titular del terreno desde el momento en que radicó la Declaración y consignó los $2,300,000 por concepto de justa compensación.[4] El 17 de noviembre de 2006 la Parte con Interés presentó una *Réplica a la Petición*. En

---

[1] *Petición*, Apéndice, págs. 68-78. El terreno tiene una cabida de 19.4871 cuerdas, equivalentes a 76,592.1342 metros cuadrados. *Exhibit A*, Apéndice, pág. 71. Posteriormente, la Administración enmendó el Exhibit A para hacer constar que, a la fecha de la expropiación, en el terreno ubicaba una estructura industrial de aproximadamente 20,190 metros cuadrados. Resolución de 25 de agosto de 2015, Apéndice, pág. 62; *Exhibit "A" Enmendado*, Apéndice, págs. 63-64.
[2] *Petición*, Apéndice, pág. 69.
[3] Apéndice, págs. 74-75.
[4] *Resolución*, Apéndice, pág. 77.

síntesis, planteó que la suma que la Administración consignó no constituía una justa compensación, pues "no se basa[ba] en el valor razonable en el mercado de la propiedad".[5]

El descubrimiento de prueba en este caso se extendió por varios años, durante los cuales las partes litigaron controversias relacionadas a la cabida de la propiedad expropiada, la presentación de informes periciales adicionales y la producción de documentos alegadamente privilegiados, entre otros asuntos.[6] Finalmente, el 28 de agosto de 2018 la Administración y la Parte con Interés sometieron al Tribunal de Primera Instancia un borrador de *Informe de Conferencia Preliminar Entre Abogados* (Informe), según exige la Regla 37.4 de Procedimiento Civil, 32 LPRA Ap. V.

En el Informe las partes identificaron que, entre otros asuntos, estaba en controversia el mejor uso del terreno. La Administración planteó que el mejor uso "es uno para actividades industriales livianas, de almacenaje y distribución, iguales o similares en naturaleza y en intensidad al uso existente al momento de adquisición de los terrenos, con limitaciones por sus condiciones".[7] En atención a las características del terreno y de su teoría en cuanto al mejor uso, la Administración plasmó en el Informe que estimaba

---

[5] *Réplica a la Petición*, Apéndice, pág. 66.
[6] Sobre este asunto, la Administración alegó que algunos documentos que se solicitaron estaban cobijados por los privilegios que establecen las Reglas de Evidencia, 32 LPRA Ap. VI. El foro primario resolvió esta controversia a favor de la Administración. Resolución, Apéndice, págs. 189-196.
[7] *Informe de Conferencia Preliminar Entre Abogados*, Apéndice, pág. 33.

su valor en \$2,322,000.[8] **No obstante, alegó que a este valor habría que restarle \$152,320 por concepto de la remediación de contaminantes ambientales**. En específico, hizo constar que:

> Este estimado de valor se podría ver afectado toda vez que, según establece el informe pericial del Geólogo Omar Negrón, en el sujeto localizaron la presencia de tanques soterrados, hidrocarburos y pobres prácticas de manejo de las actividades industriales. Se detectaron distintos impactos ambientales que el Geólogo Negrón preliminarmente estimó que tienen un costo aproximado de \$152,320.00, lo cual impacta de forma negativa al sujeto […].[9]

A esos fines, la Administración expresó en el Informe que utilizaría como prueba: (1) un estudio ambiental titulado *Environmental Site Investigation Delineation of the Presence of Hydrocarbon-Related Residues Ponce Bayland Property* que produjo la firma AG Environmental en noviembre 2008 y (2) un informe pericial que preparó el geólogo Omar Negrón a base de ese estudio y que la Administración notificó a la Parte con Interés el 6 de abril de 2018.[10] Por su parte, la Parte con Interés adelantó en el Informe los fundamentos que utilizaría para impugnar las conclusiones de los peritos de la Administración y planteó que el mejor uso del terreno era industrial y comercial en su totalidad.[11] En consecuencia, la

---

[8] Debido a un aumento en la valoración del segundo tasador que contrató, el 18 de diciembre de 2015 la Administración depositó unos \$22,000 adicionales a los \$2,300,000 que consignó cuando presentó la *Petición*, más los intereses correspondientes. *Moción para consignar*, Apéndice, pág. 88.

[9] *Informe de Conferencia Preliminar Entre Abogados*, Apéndice, pág. 33.

[10] Íd., pág. 55.

[11] Íd., pág. 35.

Parte con Interés valoró el terreno en $9,000,000.[12]

Así las cosas, el 30 de agosto de 2018 la Administración y la Parte con Interés comparecieron a la Conferencia con Antelación a Juicio. El Tribunal tornó la vista en una sobre el estado de los procedimientos y, posteriormente, no aprobó el Informe que las partes presentaron. En esa vista, el Tribunal resolvió en corte abierta que no tenía jurisdicción para considerar la prueba pericial sobre contaminación ambiental que la Administración propuso presentar. En particular, expresó que **"en cuanto a la alegación de contaminación ambiental, no es de la sala de expropiaciones. La jurisdicción es el fin público, justo valor y como coronario [sic] de ese justo valor cualquier daño que se alegue al predio".[13]** Al final de la vista, el abogado de la Parte con Interés increpó nuevamente sobre el asunto y el foro primario aclaró que "su jurisdicción es el Exhibit A".[14]

Así las cosas, el foro primario concedió un término para que la Administración depusiera a un perito de la Parte con Interés y señaló una Conferencia con Antelación a Juicio para el 12 de febrero de 2019.[15] Asimismo, el 19 de septiembre de 2018 notificó la *Minuta Resolución* que recogió lo que se resolvió en la vista. Inconforme, la Administración solicitó reconsideración. Alegó que la contaminación ambiental es un elemento que afecta el valor en el mercado del terreno

---

[12] Íd., pág. 39.
[13] *Minuta Resolución*, Apéndice, pág. 28 (Énfasis suplido).
[14] Íd., pág. 29.
[15] Esta Conferencia se suspendió debido a la paralización de los procedimientos como resultado de los trámites apelativos.

expropiado, por lo que excluirla colocaría al dueño de la propiedad expropiada en una mejor posición a la que se encontraba antes de la expropiación; alegó que ese resultado es inconsistente con los requisitos de la justa compensación.[16] Añadió que la contaminación ambiental "es una condición que podría afectar negativamente el sujeto al imponerle limitaciones a su uso o al requerir gastos para su remediación", lo cual "no es distinto a otras limitaciones físicas o reglamentarias de un sujeto que el Tribunal considera en el análisis de mejor uso y justa compensación".[17]

La Parte con Interés se opuso. Narró que los tribunales están divididos sobre si procede admitir esa evidencia en pleitos de expropiación forzosa y planteó que "son más las razones […] para no considerar el asunto de contaminación ambiental en los casos de expropiación forzosa […] que las que favorecen [considerarla]".[18] Destacó que: (1) el pleito de expropiación forzosa es un procedimiento *in rem* cuyo propósito es valorar la propiedad y no imponer responsabilidad personal por contaminación ambiental, por lo que lo relativo a la contaminación se debe ventilar en un proceso aparte; (2) admitir esa evidencia violaría el derecho a un debido proceso de ley del dueño de la propiedad expropiada pues lo priva de las garantías procesales que tendría disponible al amparo de estatutos sobre Derecho Ambiental; (3) los tribunales federales tienen jurisdicción

---

[16] *Moción para solicitar reconsideración*, *Apéndice*, pág. 20.
[17] Íd., pág. 21.
[18] *Oposición a solicitud de reconsideración*, Apéndice, pág. 3.

exclusiva sobre ciertas acciones al amparo del *Comprehensive Environmental Response Cleanup and Liability Act* (CERCLA); (4) admitir esa evidencia expone al dueño de la propiedad expropiada al riesgo de responder doblemente por la contaminación ambiental; (5) la contaminación puede surgir como resultado del proyecto para el cual se expropió, y (6) los métodos para valorar el costo de descontaminar son inconsistentes.[19]

Con relación a la evidencia específica sobre contaminación ambiental que propuso presentar la Administración, la Parte con Interés arguyó que procedía excluirla debido a la etapa tardía en que pretendió presentarla y a que la Administración no incluyó alegaciones a esos efectos en la *Petición* de expropiación ni surge evidencia al respecto en los informes de sus tasadores.[20] A base de lo anterior, sostuvo que admitir esa evidencia violaría su derecho a un debido proceso de ley. Por último, alegó que no se debía considerar la evidencia propuesta porque esta no afectó el uso que la Administración proponía dar a la propiedad, pues para realizar el proyecto "no fueron necesarios los trabajos de descontaminación" y "el área de la supuesta contaminación es ínfima".[21]

El foro primario denegó la moción de reconsideración que presentó la Administración, razón por la cual esta acudió al

---

[19] *Íd.*, págs. 4-5.
[20] *Íd.*, págs. 8-9.
[21] *Íd.*, pág. 9.

Tribunal de Apelaciones mediante el recurso de *certiorari*. Reiteró los argumentos que realizó en el foro primario.

Luego de algunos trámites, el Tribunal de Apelaciones emitió una Sentencia mediante la cual confirmó la determinación que emitió el foro primario, pero por un fundamento distinto. Según el Tribunal de Apelaciones, procedía excluir la prueba sobre contaminación ambiental debido a que la Administración —a pesar de que adquirió el título de la propiedad en el 2006— anunció "por primera vez" su intención de presentar evidencia sobre contaminación ambiental en el Informe que sometieron las partes el 23 de agosto de 2018.[22] En consecuencia, ese foro resolvió que permitir prueba sobre contaminación ambiental equivaldría a avalar una actuación "abusiva y arbitraria" del Estado en este caso, por lo que confirmó la *Minuta Resolución*.[23]

El Juez Sánchez Ramos disintió. Sostuvo que "para determinar el valor de la justa compensación, el tribunal está obligado a considerar toda prueba pertinente al respecto, y ello incluye prueba sobre posible contaminación ambiental en la propiedad".[24] Además, planteó que no existía impedimento procesal alguno para que la Administración presentara esa prueba en esta etapa de los procedimientos.[25]

---

[22] *Sentencia*, Apéndice, pág. 136 ("[e]l Estado ostenta el título y absoluto dominio sobre el inmueble desde el año 2006 por orden del tribunal […] No obstante, no es hasta el año 2018 que trae a colación la existencia de la prueba sobre contaminación ambiental".).

[23] Íd., pág. 135.

[24] Íd.

[25] Íd., págs. 136-137 ("al no haber finalizado el trámite de referencia, y en ausencia de límite de tiempo establecido por ley o por el propio foro recurrido, no existe impedimento procesal para que la peticionaria presente la referida prueba").

Inconforme, la Administración presentó ante el foro apelativo intermedio una *Moción para solicitar reconsideración de la Sentencia*. Sostuvo que, contrario a lo que concluyó el Tribunal de Apelaciones en su Sentencia, la Administración no anunció que utilizaría prueba de contaminación ambiental por primera vez en el Informe, sino que lo informó a la Parte con Interés desde mucho antes. Para sustentar esta alegación, anejó a su solicitud de reconsideración una moción que la Parte con Interés presentó **el 21 de octubre de 2011** de la cual surge que para ese entonces la Administración ya le había entregado un estudio ambiental titulado *Environmental Site Investigation Delineation of the Presence of Hydrocarbon-Related Residues Ponce Bayland Property*.[26] Además, la Administración llamó la atención a una carta que su abogado envió a la Parte con Interés el **7 de octubre de 2011** –y que obraba en el expediente judicial[27]– en donde la Administración proveyó una lista de los documentos que "anticipa […] utilizará en la vista en su fondo del caso", entre ellos el estudio ambiental antes mencionado.[28]

El Tribunal de Apelaciones no reconsideró. Nuevamente, el Juez Sánchez Ramos disintió; esta vez, y con relación a los señalamientos adicionales que realizó la Administración, el Juez Sánchez Ramos hizo constar que:

> […] la referida moción demuestra claramente que, al emitirse la Sentencia de 31 de enero de 2019, sobre

---

[26] *Moción informativa*, Apéndice, pág. 149.
[27] La carta en cuestión estaba anejada a una moción que la Parte con Interés presentó el 19 de agosto de 2014 en el tribunal. Apéndice, pág. 162.
[28] Íd.

la base de un fundamento en el cual el foro recurrido no descansó, este Tribunal no tenía ante sí elementos de juicio importantes y pertinentes relacionados con dicho fundamento, los cuales surgen de las porciones del récord que la Administración de Terrenos acompañó con su moción de reconsideración, y de conformidad con los cuales se fortalece nuestra conclusión de que no existe razón procesal alguna que impida la consideración y presentación de la prueba en controversia.[29]

Inconforme aún, la Administración presentó ante este Tribunal un recurso de *certiorari* mediante el cual solicitó que revocáramos la Sentencia que emitió el Tribunal de Apelaciones. Adujo los siguientes señalamientos de error:

1. Erró el TA al confirmar la supresión de prueba pericial esencial de la Administración de Terrenos sobre contaminación ambiental en un pleito de expropiación forzosa, ordenada por el TPI bajo el fundamento de que la Sala de Expropiaciones no tiene jurisdicción para considerar evidencia sobre contaminación ambiental.

2. Erró el TA al confirmar la decisión del TPI de ordenar la supresión de prueba pericial esencial sobre contaminación ambiental por falta de jurisdicción, bajo el "fundamento distinto" de que la Administración de Terrenos anunció por "primera vez" su intención de utilizar prueba sobre contaminación ambiental el 23 de agosto de 2018, y alegadamente descubierta en fecha contemporánea, a pesar de que de los autos surge que la propia Parte con Interés, en mociones presentadas en el año 2011, admitió que ya se le había divulgado prueba sobre contaminación ambiental y la intención de la Administración de Terrenos de utilizar la misma.

3. Erró el TA al basar su decisión en un estándar de revisión incorrecto, pues como la decisión del TPI estuvo basada en un fundamento puro de derecho, no en un ejercicio de discreción, el estándar de revisión debió ser *de novo* y no abuso de discreción.[30]

Expedimos el recurso y, posteriormente, las partes presentaron sus alegatos. La Administración reiteró los

---

[29] Resolución, Apéndice, págs. 216-217.
[30] *Certiorari*, pág. 6.

planteamientos que realizó en los foros recurridos. A su vez, la Parte con Interés arguyó que la Sala de Expropiaciones no tiene jurisdicción para considerar prueba sobre contaminación ambiental en vista de que la Administración omitió hacer constar esa característica en el Exhibit A.[31] Además, insistió en que admitir esa prueba violaría su derecho a un debido proceso de ley, debido a que: (1) la Administración propuso utilizarla tardíamente y (2) admitirla la privaría de las garantías procesales que tendría disponible al amparo de los estatutos en materia de Derecho Ambiental, las cuales no disfrutaría en el proceso de expropiación. Por último, la Parte con Interés alegó que, al comenzar y culminar el proyecto sin descontaminar la propiedad, la Administración se expuso a responsabilidad al amparo de CERCLA.[32]

Trabada así la controversia, resolvemos.

II

**A. Jurisdicción**

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. Gearheart v. Haskell, 87 DPR 57, 61 (1963); véase también Rodríguez Figueroa v. Registrador de la Propiedad, 75 DPR 712, 717 (1953) (reconociendo que la jurisdicción "es un término de amplia significación" que "[s]e refiere a, y define

---

[31] "Siendo la acción de expropiación forzosa por disposición de ley, *in rem,* no hay jurisdicción sobre una propiedad con características distintas a las que surgen del *Exhibit* 'A' […] En el presente caso las sentencias recurridas son correctas en Derecho ya que no había jurisdicción para considerar una propiedad distinta, una que nunca surgió del *Exhibit* 'A'". *Alegato de la parte recurrida*, págs. 21, 22-23.
[32] Íd., págs. 25-26.

el poder de los tribunales" e "[i]ncluye el poder de investigar los hechos, aplicar la ley, formular decisiones, dictar sentencias"). Para adjudicar un caso, el tribunal "tiene que tener tanto jurisdicción sobre la materia como sobre las partes litigiosas". Shell v. Srio. Hacienda, 187 DPR 109, 122 (2012). Por jurisdicción sobre la materia, entendemos la capacidad de un tribunal de atender el tipo de controversia que tiene ante sí. Vázquez v. ARPe, 128 DPR 513, 536 (1991).

Por disposición constitucional, los tribunales en Puerto Rico constituyen un sistema judicial unificado en términos de jurisdicción. Art. V, Sec. 2, Const. ELA, LPRA, Tomo 1.[33] Ello significa que "cualquier parte del sistema tiene jurisdicción para resolver una causa" aunque ese tribunal no tenga competencia para ello. Freire Ayala v. Vista Rent, 169 DPR 418, 441 (2006) (Énfasis suplido) (citando a J. Trías Monge, *El Sistema Judicial de Puerto Rico*, San Juan, Ed. Universitaria, 1978, pág. 136). Íd.[34] Según expresamos en

---

[33] La Ley de la Judicatura de 2003 instrumenta este mandato al disponer que "[e]l Estado Libre Asociado de Puerto Rico estará constituido en un solo distrito judicial, sobre el cual el Tribunal General de Justicia" – compuesto por el Tribunal Supremo, el Tribunal de Apelaciones y el Tribunal de Primera Instancia- "ejercerá su poder y autoridad". Art. 2.001, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura de 2003), 4 LPRA 24b.

[34] En Lemar S.E. v. Vargas Rosado, 130 DPR 203, 207 (1992) (citas omitidas), explicamos sucintamente la relación entre la jurisdicción y la competencia de un tribunal:

> Competencia es la manera en que se organiza, se canaliza el ejercicio de la jurisdicción que tiene el tribunal. De otra parte, las reglas de competencia son las que establecen la ordenada tramitación de los asuntos judiciales dentro de nuestro sistema de jurisdicción unificada. La competencia, por su naturaleza, puede obviarse si concurren el acuerdo de las partes y la anuencia del juez. Sin embargo, los jueces deben tener presente que el no atenerse a las reglas de competencia puede conducir a la anarquía y resultar en

Hernández v. Espinosa, 145 DPR 248, 258 n.7 (1998), "[e]n un sistema judicial unificado de **jurisdicción general** como el nuestro, todos los tribunales de instancia tienen la misma jurisdicción, es decir, la misma autoridad y poder. Es la competencia lo que varía entre ellos") (Énfasis en el original); Regla 3.1 de Procedimiento Civil, 32 LPRA Ap. V.[35]

Por lo tanto, como regla general, los tribunales de primera instancia en Puerto Rico -siendo tribunales de jurisdicción general- tienen jurisdicción para atender cualquier tipo de caso o controversia. Arts. 2.001 y 5.001, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura de 2003), 4 LPRA secs. 24b, 25a.

No obstante, al momento de determinar si un tribunal tiene jurisdicción sobre un caso es necesario asegurarse de que se cumplieron todos los requisitos jurisdiccionales que la ley establece. Shell, supra, pág. 123 (cita omitida) (disponiendo que los requisitos jurisdiccionales son "aquellos que deben cumplirse antes de que el tribunal pueda conocer del pleito"). Si una parte incumple con un requisito jurisdiccional que la ley establece ello priva al tribunal de jurisdicción para adjudicar los méritos de la controversia. Íd.

---

detrimento de una solución justa, rápida y económica de todo procedimiento.

[35] Jurisdicción original se refiere a la que se ejerce en primera instancia, mientras que la jurisdicción general se refiere a la que se ejerce para conocer todo tipo de casos. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 5ta ed., San Juan, 2010, sec. 406, pág. 45.

Por otra parte, un tribunal también carece de autoridad para adjudicar un caso cuando no tiene jurisdicción sobre la materia por razón de que una ley federal así lo establece. Debido a que ostentan jurisdicción general,[36] los tribunales de primera instancia en Puerto Rico de ordinario "pueden ejercer jurisdicción concurrente sobre litigios basados en la Constitución, las leyes y los tratados de Estados Unidos, excepto cuando tal jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales". Acevedo v. Srio. Servicios Sociales, 112 DPR 256, 259 (1982) (citas omitidas).

### B. CERCLA

En el 1980, el Congreso de los Estados Unidos aprobó el Comprehensive Environmental Response Cleanup and Liability Act, 42 U.S.C. sec. 9601 et seq., según enmendado (CERCLA). Ese estatuto federal –legislado en respuesta al riesgo que representa la contaminación industrial para la salud pública y el ambiente– tiene dos propósitos: (1) promover la limpieza de lugares utilizados para depositar desechos peligrosos ("hazardous waste sites") y (2) asegurar que las personas o entidades responsables por esa contaminación asuman los costos de tales esfuerzos. CTS Corp. v. Waldburger, 573 U.S. 1, 4 (2014); Burlington Northern and Santa Fe Ry. Co. v. U.S., 556 U.S. 559, 602 (2009).

Al amparo de CERCLA, la Agencia para la Protección Ambiental de Estados Unidos (EPA, por sus siglas en inglés)

---

[36] Art. 5.001, Ley de la Judicatura de Puerto Rico del 2003, 4 LPRA sec. 25a.

puede tomar acción remedial por su cuenta o puede obligar a las partes responsables por la contaminación a realizar la limpieza o a reembolsar a la EPA los costos en que incurrió para remediar el sitio contaminado. 42 U.S.C. sec. 9604(a). CERCLA impone responsabilidad –de carácter estricta y solidaria– a todas las personas o entidades potencialmente responsables por la contaminación, excepto si aplica una de las defensas que provee el estatuto.[37]

Para recuperar los costos de acciones remediales, el gobierno o personas privadas pueden instar una acción al amparo de la sección 107(a) de CERCLA. 42 U.S.C. sec. 9607. Asimismo, una persona potencialmente responsable puede instar una acción de nivelación contra otras partes potencialmente responsables al amparo de la sección 113(f)(1) del estatuto. Íd., sec. 9613. Los tribunales de distrito federales tienen jurisdicción original exclusiva sobre todas las acciones que se insten al amparo de CERCLA. 42 U.S.C. sec. 9613(b).

### C. La expropiación forzosa en Puerto Rico

Nuestra Constitución reconoce el derecho al disfrute de la propiedad como un derecho fundamental. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Este derecho no es absoluto; cede, por ejemplo, ante el poder inherente que tiene el Estado para adquirir bienes privados mediante el procedimiento de

---

[37] 42 U.S.C. sec. 9607. Las categorías de personas que pueden ser responsables de forma estricta y solidaria son: (1) el dueño actual o poseedor material de la propiedad al momento de encontrarse la contaminación en la propiedad; (2) el dueño o poseedor al momento de la disposición de las sustancias peligrosas de la propiedad; (3) personas que hicieron los preparativos para la limpieza o disposición de las sustancias peligrosas, y (4) personas que transportaron las sustancias peligrosas y seleccionaron la propiedad. 42 U.S.C. sec. 9607(a).

expropiación forzosa. <u>Municipio de Guaynabo v. Adquisición</u>, 180 DPR 206, 216 (2010); <u>ACT v. 780.6141M2</u>, 165 DPR 121, 130 (2005) (citas omitidas) ("el poder de expropiación del Estado es un atributo inherente a su poder soberano y, como tal, de superior jerarquía a todos los derechos de propiedad").

El poder de expropiar no es irrestricto. Nuestra Constitución establece límites importantes al ejercicio de esta facultad gubernamental al disponer que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. Por lo tanto, para que el Estado pueda expropiar forzosamente una propiedad privada, la Constitución exige que pague una justa compensación, destine el bien expropiado a un fin o uso público y proceda con sujeción a las leyes que regulan este procedimiento en nuestra jurisdicción. Ley de Expropiación Forzosa, 32 LPRA sec. 2901 <u>et seq.</u>; Reglas 58 y 60 de Procedimiento Civil, 32 LPRA Ap. V.[38]

La Ley de Expropiación Forzosa establece que este procedimiento "será *in rem*", es decir, que la acción se dirige contra la propiedad o propiedades a expropiarse. <u>Pueblo v. McCormick, Alcaide & Co.</u>, 78 DPR 939, 945 (1956) ("Un recurso de expropiación es un procedimiento *in rem*. No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha"). No obstante, tanto la Ley de

---

[38] Véase también el Art. 282 del Código Civil, 31 LPRA sec. 1113 ("Nadie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley").

Expropiación Forzosa como la Regla 58 de Procedimiento Civil requieren que al inicio del pleito el Estado acumule en el pleito a las personas "que tengan o reclamen un derecho" sobre la propiedad y "cuyos nombres a la sazón se conozcan". 32 LPRA sec. 2905; Regla 58.3(b) de Procedimiento Civil, supra; Municipio de Guaynabo v. Adquisición, 180 DPR 206, 218 (2010). En el pasado hemos resumido el procedimiento inicial ordinario en casos de expropiación forzosa de la manera siguiente:

> Conforme a la Ley de Expropiación Forzosa, toda acción o procedimiento de expropiación forzosa iniciado por el Estado deberá presentarse en la sala especializada de San Juan del Tribunal de Primera Instancia. Generalmente, junto a la demanda o acción de expropiación forzosa se presenta un legajo de expropiación que contiene una declaración de adquisición y entrega material de la propiedad. Si la declaración cumple con los requisitos que dispone la Ley de Expropiación Forzosa y se consigna en el tribunal la compensación estimada, el título de dominio queda investido en la entidad gubernamental que solicitó la expropiación. Una vez el titular o dueño de la propiedad es notificado del procedimiento de expropiación, este puede presentar una contestación y presentar las defensas y objeciones que tenga sobre el fin público de la expropiación o sobre la cuantía declarada como justa compensación.[39]

Como se puede apreciar, estos pleitos se dilucidan en una sala especializada -la Sala de Expropiaciones del Tribunal de Primera Instancia- a la cual se invistió con la competencia para atender las peticiones de expropiación que

---

[39] Amador Roberts v. ELA, 191 DPR 268, 278 (2014) (citas omitidas); Ley de Expropiación Forzosa, 32 LPRA secs. 2905, 2907 y 2914.

presente el Estado.[40] Durante este trámite, el Estado está obligado a cumplir con las exigencias que establecen la Ley de Expropiación Forzosa y la Regla 58 de Procedimiento Civil, supra, en cuanto al contenido de los escritos que presentará en el tribunal. La Regla 58.3 de Procedimiento Civil, 32 LPRA Ap. V, establece los requisitos que debe cumplir la petición de expropiación. En particular, el inciso (b) de esta Regla enumera una serie de documentos que el Estado deberá anejar a la petición de expropiación para hacerla efectiva y que, en conjunto, conforman el legajo de expropiación. Estos son:

(1) **El Exhibit A**, en el que **se identificarán** concreta e individualmente los bienes muebles e inmuebles objeto de expropiación, los datos registrales si la finca consta inscrita en el Registro de la Propiedad, el número catastral de la finca en el Centro de Recaudación de Ingresos Municipales, las personas con interés en el procedimiento, la fijación de la suma de dinero estimada por la parte peticionaria como justa compensación de la propiedad que se pretende adquirir y la finalidad pública del procedimiento. También se identificarán y valorarán los bienes muebles que se encuentren en la propiedad objeto de expropiación, en caso de que la parte peticionaria también interese obtener la titularidad de [e]stos.

(2) Una certificación expedida por el Registro de la Propiedad dentro de los seis (6) meses anteriores a la presentación de la demanda. No obstante, en los casos donde la certificación fue expedida dentro del periodo de seis (6) meses antes dispuesto, pero en una fecha que sobrepasa los tres (3) meses previos a la presentación de la demanda, deberá acompañarse con la certificación expedida por el Registro de la Propiedad, un estudio de título reciente. A estos fines, un estudio de título reciente significa un estudio de título realizado dentro de los diez (10) días

---

[40] Amador Roberts, supra, pág. 290 ("[L]a Ley de Expropiación Forzosa establece que la sala competente para atender pleitos de expropiación forzosa iniciados por el Estado es la sala especializada de San Juan"); Ley de Expropiación Forzosa, 32 LPRA sec. 2905.

anteriores a la presentación de la demanda. El estudio de título antes mencionado deberá ser realizado por un notario público, o por una persona natural o jurídica que posea póliza de seguro que responda por cualquier error u omisión en el título.

(3) Una consulta de ubicación - Se exime de este requisito cuando la propiedad a ser adquirida por el municipio se encuentra localizada dentro del Plan de Ordenación Territorial aprobado por la Junta de Planificación y el uso propuesto para la propiedad a adquirirse es cónsono o está permitido por lo dispuesto en dicho Plan de Ordenación Territorial.

(4) Un plano de mensura.[41]

De lo anterior surge claramente que junto a la petición de expropiación el Estado deberá incluir un documento que se denominará como Exhibit A en el que conste la siguiente información: (1) una descripción de los bienes muebles e inmuebles a expropiarse; (2) los datos registrales de la propiedad, si consta inscrita en el Registro de la Propiedad; (3) el número catastral de la finca en el Centro de Recaudación de Ingresos Municipales; (4) las personas que tengan o reclamen tener un derecho sobre la propiedad a expropiarse; (5) un estimado de la justa compensación, (6) el fin o uso público al que se destinará la propiedad expropiada, y —si el Estado pretende adquirirlos— (7) una descripción y valoración de los bienes muebles sitos en la propiedad. Regla 58.3(b)(1) de Procedimiento Civil, supra.

Por otro lado, cuando el Estado decide presentar una declaración de adquisición y entrega material en conjunto con la petición de expropiación existen requisitos adicionales

---

[41] Regla 58.3 de Procedimiento Civil, 32 LPRA Ap. V (Énfasis suplido).

con los que debe cumplir.[42] Una vez el Estado presenta la declaración de adquisición y consigna el importe del justo valor, el título sobre la propiedad queda investido inmediatamente en el gobierno.[43]

### D. Justa compensación

En un procedimiento de expropiación forzosa, "[l]a responsabilidad fundamental del Gobierno consiste en depositar una compensación justa". Adm. de Terrenos v. Nerashford Dev. Corp., 136 DPR 801, 810 (1994). Determinar qué constituye una compensación justa en un pleito de expropiación forzosa es una tarea eminentemente judicial.[44] El propósito de la justa compensación es colocar al dueño de la propiedad expropiada "en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiese expropiado". ELA v. Rexco Industries, Inc., 137 DPR 683, 689 (1994) (citas

---

[42] En particular, esa declaración deberá contener: (1) una relación de la autoridad bajo la cual se pretende adquirir la propiedad y el uso público para el cual se pretenda adquirirla; (2) una descripción de la propiedad que sea suficiente para identificarla; (3) una relación del título o interés que se pretende adquirir de la propiedad para fines públicos; (4) un plano en caso de que la propiedad pueda ser así representada; (5) un estimado de la justa compensación, y (6) un proyecto de resolución. 32 LPRA sec. 2907; Regla 58.3(c) de Procedimiento Civil, supra.

[43] "Es en este momento entonces, y no con la resolución del tribunal en que se ordena la investidura de título en el Estado, que el Gobierno adviene titular del bien expropiado". ACT v. Inesta, 165 DPR 891, 904-905 (2005) (citas omitidas).

[44] Véase ELA v. Rexco Industries, Inc., 137 DPR 683, 688-689 (1994) (citando a Monongahela Navigat'n Co. v. United States, 148 U.S. 312, 327 (1893):

> [La justa compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos —[e]sta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial. […] La constitución ha declarado que se tiene que pagar justa compensación y que su determinación es una cuestión que le compete a los tribunales") (traducción en el original).

omitidas). Por lo tanto, una compensación es justa si refleja "el valor en el mercado del bien expropiado", es decir, "el precio que un comprador estaría dispuesto a pagar en una venta voluntaria y que un vendedor estaría dispuesto a aceptar, **considerando para ello las condiciones en que se halle el bien a la fecha de la expropiación**" y el mejor uso de la propiedad en un futuro razonablemente cercano. ELA v. Fonalledas Córdova, 84 DPR 573, 579 (1962) (citas omitidas).[45] Para determinar el valor en el mercado de la propiedad expropiada, el tribunal deberá tomar en consideración "todo elemento o indicador que un comprador prudente consideraría". Administración de Terrenos de P.R. v. Nerashford Development Corp., 136 DPR 801, 809 (1994).

### E. Contaminación ambiental y justa compensación

Según reseñado, es una norma bien asentada en nuestro ordenamiento que, para determinar la justa compensación, los tribunales deben considerar todos los factores que afecten el valor en el mercado de la propiedad expropiada. Sin embargo, este Tribunal no ha resuelto específicamente si la Sala de Expropiaciones, al realizar este ejercicio, puede admitir evidencia sobre la presencia de contaminantes en la propiedad

---

[45] Ley de Expropiación Forzosa, 31 LPRA sec. 2915 ("[e]n el caso de compra o expropiación forzosa de la propiedad particular para fines de utilidad pública o beneficio social, la indemnización se deberá basar en el valor razonable en el mercado de tal propiedad […]"); véase también Pueblo v. Huyke, 70 DPR 754, 757 (1950), donde definimos "valor en el mercado" como:

> el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel en que un vendedor, en las mismas circunstancias, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonable cercano.

expropiada o sobre los costos en que habría que incurrir para remediar la contaminación. No obstante, contamos con el beneficio de varias decisiones de tribunales de otras jurisdicciones que sí han atendido este asunto, las que —por su valor persuasivo— resumimos a continuación.

　　*1. Admisión de evidencia sobre contaminación ambiental*

Los tribunales están divididos sobre si se debe admitir este tipo de evidencia en procedimientos de expropiación forzosa. No obstante, una mayoría entiende que se debe permitir presentar evidencia sobre la presencia de contaminantes en la propiedad expropiada y los costos de remediarla si es pertinente para determinar el valor en el mercado de la propiedad.[46] Lo contrario, razonan, sería inconsistente con los principios que rigen la justa compensación, pues implicaría ignorar un factor que un comprador prudente consideraría al momento de decidir cuánto ofrecer para adquirir la propiedad.[47]

Sobre ese particular, cabe resaltar la decisión del Tribunal Supremo del estado de Michigan en Silver Creek Drain Dist. v. Extrusions Div., Inc., 468 Mich. 367 (2003). En ese

---

[46] 7A *Nichols on Eminent Domain*, Capítulo G13B, Sección GB13B.03; véase 260 N. 12th St., LLC v. State of Wisconsin Dep't of Transportation, 338 Wis. 2d 34 (2011); Silver Creek Drain Dist. v. Extrusions Div., Inc., 468 Mich. 367 (2003); Ne. Ct. Econ. All., Inc. v. ATC P'ship, 256 Conn. 813 (2001); Dept. of Transportation v. Hughes, 986 P.2d 700 (Or. Ct. App. 1999); State v. Brandon, 898 S.W.2d 224 (Tenn. Ct. App. 1994); City of Olathe v. Stott, 253 Kan. 687 (1993); Stafford v. Bryan County Bd. of Educ., 466 S.E.2d 637 (Ga. Ct. App. 1995), (revocado por otros fundamentos, 476 S.E.2d 727 (Ga. 1996)); National Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City, 38 P.3d 723 (Kan. 2002).
[47] Ne. Ct. Econ. All., Inc., supra, pág. 1080 ("[J]ust compensation is ordinarily calculated by determining the fair market value of the property on the date of the taking. Excluding contamination evidence, as a matter of law, is likely to result in a fictional property value—a result that is inconsistent with the principles by which just compensation is calculated").

caso, el Tribunal Supremo estatal confirmó la decisión del tribunal de instancia de permitir que se admitiera solamente aquella evidencia de remediación que un comprador prudente hubiese tomado en consideración en lugar de evidencia sobre todos los costos de remediación en los que se incurrió:

> The actual cost of remediation in this case was approximately **$2.3 million,** while the loss of value caused by the contamination was found by the trial court to be **$237,768.**
>
> It was the trial judge's conclusion that any purchaser would have insisted on a minimal cleanup (the Type-C closure) that would have made the property useable. **The cost of this Type-C closure is far different from the amount remediation would have cost.** Thus, we conclude that the trial court made its just-compensation determination not on the basis of Extrusions' liability for cleanup costs, but on the basis of the effect of contamination on the parcel's fair market value. This was an appropriate way to consider contamination in a just-compensation proceeding under the [Uniform Condemnation Procedures Act].[48]

Como se puede apreciar, para determinar cuánto se deberá descontar de la cantidad que el Estado pagará en concepto de justa compensación, ese tribunal validó que se utilizara el costo de la remediación que llevaría a cabo un comprador prudente. Como sucedió en ese caso, esa suma podría ser muy distinta a lo que costaría remediar la propiedad totalmente.

En términos generales, los tribunales que permiten que se admita evidencia sobre contaminación ambiental y los costos de remediarla en pleitos de expropiación forzosa lo hacen sujeto únicamente a que esta cumpla con los requisitos

---

[48] <u>Silver Creek Drain Dist.</u>, supra, pág. 381 n.16 (Énfasis suplido).

que establece el derecho probatorio. En particular, se enfatiza que esa evidencia debe ser pertinente para determinar el valor en el mercado de la propiedad expropiada y que se deben seguir las reglas relativas a la presentación de prueba pericial.[49]

No obstante, al menos un tribunal –el Tribunal Supremo del estado de Florida– resolvió que, aunque procede admitir evidencia sobre contaminación ambiental en pleitos de expropiación forzosa, para ello habrá que cumplir con requisitos probatorios adicionales. En Finkelstein v. Dep't of Transp., 656 So. 2d 921, 925 (Fla. 1995), ese Tribunal pautó que la evidencia sobre contaminación ambiental, "because of its prejudicial nature", no debe formar parte de un pleito de expropiación forzosa excepto cuando sea necesaria para explicar hechos que demuestren que la contaminación provocó una reducción en el valor de la propiedad expropiada.[50] A la luz de ello, resolvió que el mero hecho de que una propiedad esté contaminada no es por sí solo suficiente para concluir que sufrió una disminución en valor, por lo que requirió que el proponente presente evidencia sobre

---

[49] 260 N. 12th St., LLC v. State of Wisconsin Dep't of Transportation, 338 Wis. 2d 34, 54 n.5 (2011) (resolviendo que los tribunales tienen discreción para admitir o excluir esta evidencia "in accordance with our rules of evidence governing relevance and the admissibility of expert testimony").

[50] Además, en este caso el tribunal también determinó que el foro primario actuó correctamente al excluir evidencia sobre los costos de remediación, por lo que la propiedad se debía valorar como si hubiese sido remediada. No obstante, eso se debió a que existía un programa estatal que le reembolsaría al Estado esos costos. No realizó una determinación sobre si los costos de remediación serían pertinentes en un procedimiento de expropiación forzosa en que no estuviera disponible un programa de reembolso. Finkelstein v. Dep't of Transp., 656 So. 2d 921, 924 (Fla. 1995) ("We do not decide whether remediation costs would be relevant in a valuation proceeding which involved property for which such reimbursement was not available").

ventas comparables de propiedades contaminadas.[51] Un juez concurrió; hubiese resuelto que procedía admitir esa evidencia conforme al derecho probatorio en lugar de establecer restricciones adicionales para presentarla en pleitos de expropiación forzosa.[52]

*2. Exclusión de evidencia sobre contaminación ambiental*

Los tribunales que excluyen esta evidencia en pleitos de expropiación forzosa comparten preocupaciones sobre cómo se pueden perjudicar los derechos de las partes con interés si la evidencia se admitiera. Algunos sostienen que un pleito de expropiación forzosa no se dilucida en un foro adecuado para imponer responsabilidad por contaminación ambiental y que permitir que se presente evidencia sobre contaminación o los costos de remediación en pleitos de expropiación priva a los dueños de la propiedad de salvaguardas procesales que de otra manera tendrían disponibles al amparo de estatutos en materia de Derecho Ambiental.[53] Otros entienden que es necesario excluir evidencia sobre contaminación ambiental para impedir lo que denominan como una "incautación doble". Plantean que no es justo que el dueño de la propiedad expropiada responda "doblemente" por la contaminación: una vez cuando la autoridad expropiadora paga un precio menor para adquirir la

---

[51] Íd., pág. 925.

[52] Íd., pág. 926 ("I would answer the certified question as framed in the majority opinion in the affirmative, and leave the issues of evidence and valuation to be resolved according to prevailing law").

[53] Aladdin, Inc., supra, pág. 615 ("Chapter 455B provides the proper procedure for the recovery of environmental remediation costs. If such cleanup costs are admissible and considered by a compensation commission without the procedural safeguards in chapter 455B, the procedural due process rights of the property owner are violated").

propiedad debido a la depreciación que esta sufre a causa de la contaminación, y una segunda vez si la autoridad expropiadora o el Estado insta un procedimiento al amparo de una ley ambiental para recuperar los costos de remediar la contaminación. City of New York v. Mobil Oil Corp., 12 A.D.3d 77, 83 (2004) ("it would be 'fundamentally unfair' to allow the City to value the property as contaminated for condemnation purposes, and yet still recover the remediation costs").[54]

En vista de estas consideraciones, al menos un tribunal optó por excluir del procedimiento de expropiación toda evidencia sobre contaminación ambiental en la propiedad expropiada.[55] Otros favorecen que se excluya evidencia sobre los costos de remediación y que la propiedad expropiada se valore como si ya hubiese sido remediada ("as remediated").[56] Es decir, permiten presentar evidencia sobre el hecho de que la propiedad estuvo contaminada en algún momento, pues razonan que el estigma que produce el hecho de que la propiedad estuvo contaminada puede persistir aun luego de la remediación.[57] Por último, para evitar la posibilidad de una

---

[54] Véase también Anda, supra, y Suydam Inv'rs, supra.

[55] Aladdin, Inc. v. Black Hawk Cty., 562 N.W.2d 608, 610 (Iowa 1997).

[56] Véase Moorhead Econ. Dev. Auth. v. Anda, 789 N.W.2d 860, 865 (Minn. 2010); In re City of Syracuse Indus. Dev. Agency, 20 A.D.3d 168 (2005); City of New York v. Mobil Oil Corp., 12 A.D.3d 77, 78, (2004); Hous. Auth. of City of New Brunswick v. Suydam Inv'rs, L.L.C., 177 N.J. 2 (2003).

[57] Íd.; véase Jack R. Sperber, *A Clean Look at Dirty Property: Emerging issues and common problems when valuing contaminated properties in eminent domain proceedings*, SS035 ALI-ABA 705, 717 ("The use of the term 'as remediated' is important, and distinct from value 'as if clean'. It assumes that the property is contaminated but has been cleaned up to applicable regulatory standards. There may still be some negative effect on the property's value due to risk, use restraints, or general stigma associated with formerly contaminated properties.").

"incautación doble", algunos tribunales han resuelto que procede que parte de la justa compensación que el Estado pague al dueño de la propiedad expropiada se deposite en un fideicomiso o una cuenta "escrow" de la cual el Estado podrá recobrar los costos de la remediación luego de instar una acción aparte al amparo de una ley ambiental que regule ese proceso.[58]

III

A.

Evaluemos en primer lugar si fue correcto el fundamento que invocó el Tribunal de Apelaciones para confirmar la *Minuta Resolución* que emitió la Sala de Expropiaciones del Tribunal de Primera Instancia. Según el foro apelativo intermedio, permitir que se presente evidencia sobre contaminación ambiental en esta etapa de los procedimientos equivaldría a avalar una pretensión arbitraria y abusiva del Estado debido a que la Administración anunció por primera vez su intención de utilizar esa prueba en el Informe que sometieron las partes conjuntamente el 23 de agosto de 2018.

Surge del expediente que la Administración le informó a la Parte con Interés que utilizaría la evidencia en cuestión desde mucho antes de someter el Informe. Esto se desprende de las mociones que la propia Parte con Interés presentó en el tribunal durante el extenso descubrimiento de prueba.[59]

---

[58] Véase <u>Suydam Inv'rs</u>, supra; <u>Mobil Oil Corp.</u>, supra.

[59] Véase la *Moción informativa respecto a producción de documentos requeridos a la peticionaria* que presentó la Parte con Interés el 21 de octubre de 2011, donde admite que la Administración le entregó el estudio ambiental en cuestión ese mes. Apéndice, pág. 149. Véase también *Tercera solicitud de orden para descubrir* que presentó la Parte con Interés el 19

Además, a pesar de que el litigio se ha extendido por más de una década, este caso se encuentra en una etapa procesal relativamente temprana; incluso, el descubrimiento de prueba no había culminado para la fecha en que comenzaron los trámites apelativos.[60]

Por lo tanto, resolvemos que el Tribunal de Apelaciones erró al confirmar la *Minuta Resolución* que emitió el foro primario a base de un fundamento que no encuentra apoyo en el expediente.[61] En vista de ello, concluimos que la Administración notificó oportunamente a la Parte con Interés sobre su intención de presentar la evidencia sobre contaminación ambiental. Debido a que la notificación fue adecuada, no se violó el derecho a un debido proceso de ley de la Parte con Interés por esa razón, según se alegó.

B.

La Sala de Expropiaciones del Tribunal de Primera Instancia determinó que no tenía jurisdicción para considerar prueba sobre contaminación ambiental. Erró al resolver así.

La Sala de Expropiaciones es un tribunal de primera instancia de jurisdicción original general. Por lo tanto, a

---

de agosto de 2014, en donde aneja una carta que el abogado de la Administración le envió el 7 de octubre de 2011. Íd., pág. 152. En esa carta la Administración proveyó una lista de los documentos que "anticipa […] utilizará en la vista en su fondo del caso", entre ellos el estudio ambiental antes mencionado. Íd., pág. 162.

[60] *Minuta Resolución*, Apéndice, pág. 30 (concediendo un término a la Administración para deponer a un perito de la Parte con Interés). Surge del expediente que esa dilación se debió a que las partes litigaron extensamente controversias relacionadas a la cabida del inmueble y el descubrimiento de documentos privilegiados, y a que ambas partes –con la venia del tribunal– presentaron varios informes periciales adicionales.

[61] Por entender que esta determinación explica adecuadamente por qué el fundamento que empleó el Tribunal de Apelaciones es incorrecto, no atendemos el tercer señalamiento de error que adujo la Administración.

menos que opere una excepción a la norma general, tiene jurisdicción para atender cualquier tipo de caso o controversia que surja en Puerto Rico. Art. V, Sec. 2, Const. ELA, LPRA, Tomo 1; Arts. 2.001 y 5.001, Ley de la Judicatura de 2003, supra; Freire Ayala, supra; Hernández v. Espinosa, supra.

De la *Minuta Resolución* no surge que el foro primario identificó una excepción a esta norma general más allá de afirmar que "su jurisdicción es el Exhibit A".[62] Haciendo eco de este lenguaje, la Parte con Interés alega que la Administración incumplió con un requisito jurisdiccional al no hacer constar que la propiedad estaba contaminada en el Exhibit A que presentó junto a la petición de expropiación. Arguye que esa omisión impide que esa evidencia se presente en el juicio.

No tiene razón. La Regla 58.3 de Procedimiento Civil, supra, no exige que se hagan constar en el Exhibit A todas las características de la propiedad expropiada, so pena de que no se pueda presentar evidencia sobre una característica omitida. Esa regla exige únicamente que se describan los bienes muebles e inmuebles a expropiarse de manera que se puedan identificar.[63] No haber hecho constar ahí que la propiedad está contaminada, entonces, no impide que la Administración presente evidencia sobre contaminación ambiental y los costos de remediarla durante el juicio, ni

---

[62] *Minuta Resolución*, Apéndice, pág. 29.
[63] Véase Regla 58.3 de Procedimiento Civil, supra ("El Exhibit A, en el que se **identificarán** concreta e individualmente los bienes muebles e inmuebles objeto de expropiación […]").

mucho menos priva de jurisdicción al tribunal para considerarla.

Por otro lado, en algunos escritos la Parte con Interés planteó escuetamente que al momento de evaluar si procede que los tribunales reciban prueba sobre contaminación ambiental en pleitos de expropiación forzosa se debía tener en cuenta que los tribunales federales tienen jurisdicción original exclusiva en torno a las controversias que surjan al amparo de CERCLA.[64] No obstante, la sección 113 de CERCLA -que fija la jurisdicción del foro federal- no priva de jurisdicción a la Sala de Expropiaciones del Tribunal de Primera Instancia para considerar evidencia sobre contaminación ambiental. Esto se debe a que la acción de expropiación forzosa no es una acción al amparo de CERCLA. 42 U.S.C. sec. 9613(b); _Atl. Richfield Co. v. Christian_, 140 S. Ct. 1335, 1349 (2020) ("[CERCLA] deprives state courts of jurisdiction over claims brought under the Act. But it does not displace state court jurisdiction over claims brought under other sources of law").

En vista de lo anterior, concluimos que no existe escollo jurisdiccional que impida que la Sala de Expropiaciones tome una determinación en cuanto a la admisibilidad de la evidencia sobre contaminación ambiental y los costos de remediarla en pleitos de expropiación forzosa.

C.

---

[64] _Oposición a solicitud de reconsideración_, Apéndice, págs. 4-5; _Moción en cumplimiento de orden y de oposición al recurso de certiorari_, Apéndice, págs. 103, 105.

Resuelto lo anterior, evaluamos si la evidencia sobre contaminación ambiental y sobre los costos de remediarla son susceptibles de ser admitidas en pleitos de expropiación forzosa.

La jurisprudencia de este Tribunal ha definido con particular precisión los requisitos de la justa compensación. Se requiere que el Estado pague al dueño el valor en el mercado de la propiedad expropiada, es decir, lo que un comprador prudente ofrecería y un vendedor aceptaría, ninguno de los dos estando obligados a comprar o vender, respectivamente. Para evaluar si la cantidad que el Estado depositó cumple con ese estándar, la Sala de Expropiaciones tiene que considerar "todo elemento o indicador que un comprador prudente consideraría",[65] lo cual requiere tomar en cuenta "las condiciones en que se halle el bien a la fecha de la expropiación".[66] Por lo tanto, el ejercicio de la competencia con la cual se invistió a la Sala de Expropiaciones requiere que reciba y evalúe toda la evidencia que sea pertinente a esa determinación y que cumpla con los demás requisitos que establecen las Reglas de Evidencia, 32 LPRA Ap. VI.

La contaminación ambiental es una condición de una propiedad que, **según las circunstancias de cada caso**, puede impactar significativamente la cantidad que estaría dispuesto a pagar un comprador prudente para adquirirla. Ne. Ct. Econ.

---

[65] Administración de Terrenos de P.R. v. Nerashford Development Corp., 136 DPR 801, 809 (1994).
[66] ELA v. Fonalledas Córdova, 84 DPR 573, 579 (1962) (citas omitidas); Pueblo v. Huyke, supra.

All., Inc., supra ("[T]he following factors, in addition to the actual costs of remediation, may make a particular parcel less attractive to potential purchasers: (1) potential liability under various environmental statutory schemes; (2) potential litigation brought by members of the public for damages relating to the contaminants; (3) stigma to the property even after full remediation; (4) higher financing costs charged by lending institutions by virtue of the contamination; and (5) increased regulation") (citas omitidas). Es razonable pensar que –como norma general– un comprador prudente "en una venta voluntaria" no estaría dispuesto a pagar por una finca con contaminación ambiental lo mismo que por una finca idéntica que no esté contaminada. ELA v. Fonalledas, supra; Ne. Ct. Econ. All., Inc., supra, pág. 1080 ("It blinks at reality to say that a willing buyer would simply ignore the fact of contamination, and its attendant economic consequences, including specifically the cost of remediation, in deciding how much to pay for property"). En ese sentido, la contaminación ambiental no es distinta a otras características que el tribunal considera en el análisis de mejor uso y justa compensación ordinariamente. Coincidimos con el Tribunal Supremo del estado de Wisconsin cuando expresa:

> We view evidence of environmental contamination no
> differently than evidence of a leaky basement, a
> cracked foundation, or a dilapidated roof: in each
> case, if the damage and the attendant costs of
> repair would influence a prudent purchaser in
> determining how much to pay for the property, then
> evidence of such damage and repair costs is

> relevant to fair market value and therefore admissible in condemnation proceedings.[67]

Se trata, pues, de un tipo de evidencia que pudiese resultar altamente pertinente a la determinación que está llamada a realizar la Sala de Expropiaciones.

Ahora bien, la Parte con Interés argumenta que esa prueba se debe excluir debido a que admitirla violaría el derecho a un debido proceso de ley que le garantizan estatutos en materia de Derecho Ambiental.[68] Como vimos, algunos tribunales han avalado esa postura y han identificado argumentos adicionales que, a su entender, justifican excluir en todo o en parte esa evidencia en pleitos de expropiación forzosa.

Esos argumentos no nos persuaden. En primer lugar, admitir esa evidencia en un pleito de expropiación forzosa no viola el derecho a un debido proceso de ley al que tienen derecho los dueños de la propiedad al amparo de CERCLA o cualquier otro estatuto ambiental que permita recobrar los costos de remediación. El procedimiento de expropiación forzosa es uno *in rem* que, por su propia naturaleza, no impone responsabilidad personal de clase alguna a los dueños de la propiedad expropiada.[69] El alcance limitado de la encomienda

---

[67] 260 N. 12th St., LLC, supra, págs. 41, 55.

[68] *Alegato de la parte recurrida*, págs. 26, 28.

[69] "Unlike in personam actions, which adjudicate the rights and obligations of individual persons or entities, in rem actions affect only the property before the court and carry no in personam significance, other than to foreclose any person from later seeking rights in the property subject to the in rem action". Michael L. Stokes, Valuing Contaminated Property in Eminent Domain: A Critical Look at Some Recent Developments, 19 Tul. Envtl. L.J. 221, 243 (2006) (citando R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 957 (4th Cir. 1999)). En consecuencia, cualquier imputación de responsabilidad a cualquiera de las partes al amparo de CERCLA no está ante la consideración del tribunal en un pleito de expropiación forzosa. En vista de ello, no atendemos el planteamiento que realizó la Parte con Interés al respecto en su alegato.

del tribunal en este proceso –determinar la justa compensación que el Estado debe pagar para adquirir bienes forzosamente– no guarda relación con cómo o por qué la propiedad advino a su condición actual y quién es responsable.[70] Lo anterior, debido a que el valor en el mercado de la propiedad expropiada al momento de la expropiación -y el efecto que pudiese tener la contaminación sobre ese valor- será el mismo independientemente de quién provocó la contaminación. Michael L. Stokes, Valuing Contaminated Property in Eminent Domain: A Critical Look at Some Recent Developments, 19 Tul. Envtl. L.J. 221, 243 (2006) ("The fair market value of the contaminated land would be the same no matter whether the current landowner unknowingly bought it a week before or used it to store chemical waste for decades [...] **the property is worth what it is worth whether the owner put the contamination there or not**") (Énfasis suplido).

En resumen, el procedimiento de expropiación forzosa no supone imponer responsabilidad por contaminación ambiental al dueño de la propiedad expropiada, por lo que no se vulneran las garantías procesales que estatuyen las leyes ambientales que permiten al Estado o a individuos recobrar los costos de remediación por contaminación ambiental. Por lo tanto, no tiene razón la Parte con Interés cuando alega que admitir evidencia sobre contaminación ambiental en un pleito de

---

[70] Ne. Ct. Econ. All., Inc., supra, págs. 837-838 ("The condemnor is acquiring property in a given condition, and with a value based on that condition. How the property got to be that way and who is responsible has nothing to do with that determination").

expropiación forzosa violaría su derecho a un debido proceso de ley al amparo de estatutos en materia de Derecho Ambiental.

Tampoco coincidimos con aquellos tribunales que optaron por valorar la propiedad como si hubiese sido remediada ("as remediated") para evitar una "incautación doble", por dos razones principales. Primero, valorar la propiedad como si hubiese sido remediada contradice nuestra jurisprudencia sobre lo que constituye justa compensación, pues colocaría al dueño de la propiedad expropiada en una mejor posición pecuniaria a la que estaba antes de la expropiación. ELA v. Rexco Industries, supra. Además, requeriría que el tribunal ignore una característica de la propiedad que un comprador prudente -según las circunstancias del caso- hubiese tomado en consideración al momento de realizar una oferta, Administración de Terrenos de P.R., supra, y conduciría al resultado absurdo de obligar a los peritos del Estado a proveer estimados de valor que no guardan relación con la condición real de la propiedad al momento de la expropiación.[71]

Segundo, el supuesto de "incautación doble" es especulativo; presume equivocadamente que existe certeza sobre que se instará una acción independiente al amparo de un estatuto ambiental contra el dueño de la propiedad expropiada. 260 N. 12th St., LLC v. State of Wisconsin Dep't

---

[71] State v. Brandon, 898 S.W.2d 224, 227 (Tenn. Ct. App. 1994) ("The error of the trial court's Order excluding such evidence is underscored by the surreal spectacle of the State's land appraisal experts being forced to testify before the jury as if the land were uncontaminated, when they in fact knew that surveys had found soil and water on and under the property to be contaminated").

of Transportation, 338 Wis. 2d 34, 57-59 (2011). No obra en el expediente evidencia alguna tendente a demostrar que ello ocurrirá con relación a la Parte con Interés en este caso.[72]

En todo caso, la mera posibilidad de que eso suceda no justifica excluir evidencia sobre contaminación ambiental como cuestión de derecho en pleitos de expropiación y de esta manera obligar al Estado a pagar más de lo que la propiedad expropiada vale en el mercado.[73] La compensación debe ser justa tanto para el ciudadano cuyo derecho a la propiedad fue intervenido como para la entidad que la adquiere mediante el desembolso de fondos públicos. United States v. Commodities Trading Corp., 339 U.S. 121, 123 (1950) ("Whatever the circumstances […] the dominant consideration always remains the same: [w]hat compensation is 'just' both to an owner whose property is taken and to the public that must pay the bill?"); State ex rel. Dep't of Transp. v. Hughes, 162 Or. App. 414, 421, 986 P.2d 700, 704 (1999) ("A property owner is entitled to receive the value of what he or she has been deprived of, and no more. **To award less would be unjust to the owner; to**

---

[72] El impacto que pudiese tener admitir evidencia sobre contaminación ambiental en un pleito de expropiación forzosa en una acción posterior al amparo de un estatuto ambiental es un asunto que debe dilucidarse en ese segundo proceso, si es que ocurre, y no como parte del procedimiento de expropiación. Ese asunto no está ante nuestra consideración en este caso. 260 N. 12th St., LLC, supra, pág. 59.

[73] Robustece esta conclusión el hecho de que algunos estatutos que permiten recobrar costos de remediación por contaminación ambiental incorporan mecanismos que reducen el riesgo de que suceda la llamada "incautación doble". Por ejemplo, la sección 114 de CERCLA prohíbe que una parte que recobre costos de remediación al amparo de cualquier otra ley federal o estatal recobre los mismos costos al amparo de CERCLA. 42 U.S.C. sec. 9614 ("Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter"); véase también, Stokes, supra, págs. 245-250.

**award more would be unjust to the public**") (Énfasis suplido).

En fin, ignorar la condición real de la propiedad al momento de la expropiación, en atención a una contingencia, distorsionaría el ejercicio judicial de fijar una compensación justa, pues provocaría que el público pague un valor en el mercado ficticio para adquirir la propiedad. Nuestra jurisprudencia no admite ese resultado. Por lo tanto, resolvemos que la evidencia de contaminación ambiental y sobre los costos de remediarla puede admitirse en pleitos de expropiación forzosa para determinar el valor en el mercado de la propiedad expropiada al momento de la incautación, conforme con lo aquí dispuesto. Su admisibilidad, a su vez, quedará sujeta a lo dispuesto en las Reglas de Evidencia, supra.

Finalmente, la Parte con Interés insiste en que no procede admitir la evidencia que propuso la Administración debido a que: (1) la Administración culminó la obra sin que fuera necesario descontaminar la propiedad, (2) "el área de la supuesta contaminación es ínfima", (3) la contaminación ambiental no surge de los informes que prepararon varios tasadores de la Administración y (4) la Administración "nunca le dio utilidad" a esa evidencia hasta esta etapa del proceso.[74] Estas alegaciones, sin embargo, están dirigidas a atacar el valor probatorio de la evidencia, no su admisibilidad.

---

[74] *Oposición a moción de reconsideración*, pág. 9; *Alegato de la parte recurrida*, pág. 27.

Según resuelto, la admisibilidad de la evidencia sobre contaminación ambiental y sobre los costos de remediarla en pleitos de expropiación forzosa se rige por los requisitos que establecen las Reglas de Evidencia, _supra_. Ello implica, entre otras cosas, que la parte que propone la evidencia sobre contaminación deberá demostrar que es pertinente para propósitos de determinar el valor en el mercado que tenía la propiedad al momento de la expropiación. Es decir, debe demostrar que la contaminación, o la prueba de los costos de remediarla, influiría en la oferta que realizaría un comprador prudente para adquirir la propiedad.

IV

Por los fundamentos que anteceden, se revocan las determinaciones recurridas y se devuelve el caso a la Sala de Expropiaciones del Tribunal de Primera Instancia para que continúen los procedimientos en conformidad con lo aquí dispuesto. En particular, el foro primario deberá evaluar si la evidencia específica sobre contaminación ambiental y sobre los costos de remediación que presentó la Administración son admisibles, de conformidad con las Reglas de Evidencia, _supra_, y nuestros pronunciamientos en esta Opinión.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos de
Puerto Rico

    Peticionaria

       v.

                          CC-2019-0212

Ponce Bayland Enterprises,
Inc.

    Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revocan las determinaciones recurridas y se devuelve el caso a la Sala de Expropiaciones del Tribunal de Primera Instancia para que continúen los procedimientos en conformidad con lo aquí dispuesto. En particular, el foro primario deberá evaluar si la evidencia específica sobre contaminación ambiental y sobre los costos de remediación que presentó la Administración son admisibles, de conformidad con las Reglas de Evidencia, supra, y nuestros pronunciamientos en la Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una opinión concurrente en parte y disidente en parte a la que se unió el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Administración de Terrenos de Puerto Rico<br><br>    Peticionaria<br><br>       v.<br><br>Ponce Bayland Enterprise, Inc.<br><br>    Recurrida | CC-2019-0212 | |

Opinión Concurrente en parte y Disidente en parte emitida por la Jueza Asociada señora Pabón Charneco a la cual se une el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 29 de junio de 2021.

El recurso ante nos permite examinar la facultad poseída por los tribunales para considerar evidencia de contaminación ambiental en los procesos de expropiación forzosa. Tal como resuelve la Opinión Mayoritaria, no existe un impedimento jurisdiccional para que esta clase de prueba sea evaluada en un procedimiento de expropiación forzosa. La evidencia de contaminación es admisible siempre que sea pertinente para determinar el valor en el mercado de la propiedad. Sin embargo, discrepo de la norma establecida por la Mayoría por entender que no ofrece unas guías mínimas a la Sala Especializada de Expropiaciones para el manejo

adecuado de esta evidencia. Dado los intereses envueltos, procedía reconocer salvedades adicionales sobre la manera de considerar este tipo de prueba.

En primer término, la prueba de contaminación ambiental en cuestión se refiere a la presencia en la propiedad de tanques soterrados, hidrocarburos y pobres prácticas de manejo de actividades industriales. De los autos no queda claro si la contaminación afectaba el valor de la propiedad en la fecha de la expropiación. Esto, dado que el Estado advino titular desde 2006, la propiedad presuntamente ha sufrido alteraciones desde su expropiación, se alega fue arrendada a una entidad previo y posterior a la incautación, y existe controversia sobre la existencia de estudios ambientales realizados contemporáneos a la fecha de incautación. Lo anterior incide sobre la admisibilidad de la prueba ofrecida ya que, de concluirse que la contaminación ocurrió posterior a la expropiación, sería inapropiado considerarla al determinar la justa compensación.

En segundo término, se debió aprovechar la oportunidad para detallar la manera adecuada de considerar la evidencia de contaminación, en especial cuando en este caso la peticionaria erróneamente promulga una reducción dólar por dólar de los costos de remediación a la cantidad de justa compensación. La admisibilidad de esta prueba no debe producir la tergiversación del propósito de dicho proceso (determinar cuánto es una justa compensación), por otro que busca establecer la cantidad de los costos de remediación y

quién es responsable por pagarlos. En lugar de meramente establecer que esta prueba es admisible, hubiera conciliado los intereses envueltos para contrarrestar las críticas que plagan el permitir su inclusión. De esa manera, los foros inferiores tendrían claridad sobre los elementos a servir de guía al ejercer su discreción en cuanto a la pertinencia de la prueba de contaminación en procesos de expropiación forzosa.

Debido a que los hechos que dieron lugar a la controversia de autos están correctamente expuestos en la Opinión Mayoritaria, me limito a discutir brevemente el Derecho aplicable y explicar mi postura.

I

El derecho de propiedad disfrutado por una persona puede afectarse cuando, para el beneficio común de la sociedad, el Estado ejerce su poder de dominio eminente. Al emprender la referida acción, el Gobierno está obligado a pagarle al dueño de la propiedad incautada una justa compensación. Sec. 9, Art. II, Const. PR, LPRA, Tomo 1. Mediante el pago de la justa compensación se pretende "colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad". *Administración de Terrenos de Puerto Rico v. Corporación Pesquera Henares, Inc.*, 201 DPR 14, 22 (2018).

Para evitar actuaciones abusivas o arbitrarias por parte del Estado, el ejercicio de este poder soberano está supeditado a la Ley de Expropiación Forzosa, Ley de 12 de

marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*, y la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V. Estas fuentes de derecho le conceden competencia a la Sala Especializada de Expropiaciones para atender los procedimientos de expropiación forzosa. 32 LPRA secs. 2905, 2014. De estas disposiciones también se desprende el alcance limitado de la competencia conferida a esta Sala, la cual se ciñe a determinar: (1) si le asiste o no al demandante el derecho a la expropiación de la propiedad de que se trate o a la imposición de alguna servidumbre, y (2) la cantidad que el demandante deberá satisfacer al demandado. 32 LPRA sec. 2911.

En el ejercicio de su función, la Sala Especializada de Expropiaciones considera prueba encaminada a establecer el valor de la propiedad y, por consiguiente, la justa compensación que procede pagarle al dueño expropiado. Esta valoración depende de circunstancias relacionadas al mercado de bienes raíces, incluyendo el mejor y más provechoso uso que pudiere dársele a la propiedad.[75] En tal sentido, hemos expresado que:

---

[75] La determinación del mejor uso y justo valor de la propiedad no puede descansar en bases inciertas y especulativas:

> Al determinar el valor en el mercado de una propiedad inmueble para propósitos de expropiación, no debe considerarse únicamente el valor de la propiedad para el uso que el dueño le ha dado. La posibilidad de su uso para todos los propósitos, presentes y futuros, para los cuales se adapte y para los cuales pueda razonablemente adaptarse, debe considerarse. Su valor para el uso que puedan asignarle, si a ellos perteneciera, hombres prudentes y conocedores y que dispongan de medios, debe ser el índice final. Por otro lado, no deben tomarse en consideración usos posibles que sean remotos o especulativos o que requieran la concurrencia de tantos sucesos y condiciones

> [N]o debe tomarse por base lo que un especulador, arriesgándose, podría obtener en el futuro, sino **el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquél en que un vendedor, en las mismas circunstancias, estaría dispuesto a vender**, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonable cercano. (Énfasis suplido). *Pueblo v. Huyke*, 70 DPR 754, 757 (1950).

Al momento de fijar este valor, se debe efectuar "una hábil sincronización de varios factores, y en último análisis, un sano equilibrio entre el derecho de los propietarios y las exigencias de la comunidad. [...] Su determinación excluye bases inciertas y puramente especulativas". *ELA v. Fonalledas Córdova*, 84 DPR 573, 579 (1962).

En el ámbito de la prueba considerada por los tribunales al valorar la propiedad, se ha manifestado en varias jurisdicciones de los Estados Unidos una controversia respecto a la admisibilidad de evidencia de contaminación en un procedimiento de expropiación forzosa. En el caso de autos nos enfrentamos a esta misma controversia. Actualmente existe una división en estos foros, lo cual no es sorpresivo puesto que ambas posiciones, tanto la que promulga su admisibilidad como la que promulga su exclusión, presentan argumentos válidos.

---

extrínsecas como para no tener un efecto perceptible sobre el valor presente en el mercado. Puede presentarse evidencia que pruebe los usos a que naturalmente puede adaptarse la propiedad en su condición presente. Los futuros planes o esperanzas del dueño son completamente irrelevantes. Esos asuntos se estiman muy remotos o especulativos para ser considerados. *ELA v. Sucn. Gautier*, 81 DPR 580, 594 n.18 (1959) (citas y comillas omitidas).

Por un lado, los tribunales que permiten la admisión de prueba de contaminación lo hacen por su pertinencia y por considerarla como una característica de la propiedad. La admisibilidad de esta prueba parece ser la posición prevaleciente.[76] Por el otro lado, los tribunales que excluyen este tipo de prueba comúnmente esgrimen como explicación las razones siguientes: (1) permitirla se presta para confundir el proceso *in rem* por uno *in personam* en el cual se adjudica responsabilidad por originar la contaminación; (2) se ve implicado el debido proceso de ley ya que los dueños de la propiedad no tienen en el procedimiento de expropiación las garantías que sí tienen disponibles en un proceso independiente bajo otras leyes, como lo sería uno bajo la ley federal *Comprehensive Environmental Response, Compensation, and Liability Act* (CERCLA), 42 USC sec. 9601 *et seq.*; (3) el peso probatorio aplicable a un proceso de expropiación forzosa *vis à vis* el aplicable a un proceso independiente que determina responsabilidad por la contaminación es distinto, y (4) el riesgo para el dueño de sufrir una doble incautación. Véanse 7A *Nichols on Eminent Domain*, Capítulo G13B, Sec. G13B.03[2]; *Aladdin, Inc. v. Black Hawk Cnty.*, 562 N.W.2d 608 (Iowa 1997); *Dep't of Transp. v. Parr*, 633 N.E.2d 19 (Illinois 1994).

---

[76] *260 North 12th Street, LLC v. State of Wisconsin Dept. of Transportation*, 808 N.W.2d 372 (Wis. 2011); *Silver Creek Drain District v. Extrusions Division, Inc.*, 663 N.W.2d 436 (Mich. 2003); *Northeast Ct. Economic Alliance, Inc. v. ATC Partnership*, 776 A.2d 1068 (2001); *State v. Brandon*, 898 SW 2d 224 (Tenn. App. 1994).

Reconociendo las dificultades implicadas en la admisión de esta prueba, incluso algunos de los tribunales que la admiten lo hacen de manera limitada. Véase *Moorhead Economic Development Authority v. Anda*, 789 N.W.2d 860, 878-883 (Minn.,2010). Para enfrentar esta problemática, algunas jurisdicciones permiten la presentación de prueba de contaminación, pero excluyen evidencia de los costos de remediarla. Véanse *City of New York v. Mobil Oil Corp.*, 12 A.D.3d 77 (N.Y.App.Div.2004); *Housing Authority of City of New Brunswick v. Suydam Investors*, L.L.C., 177 N.J. 2 (2003). Generalmente solo admiten prueba demostrativa del estigma que pudiera perdurar en el mercado por haber estado contaminada la propiedad.[77] Los tribunales que excluyen la evidencia relacionada a los costos de remediación lo hacen para eliminar totalmente el riesgo a que ocurra una doble incautación. *Moorhead Economic Development Authority v. Anda*, supra, págs. 878-79. En el contexto de la presente controversia, el denominado riesgo de doble incautación consiste en que el dueño expropiado, sin hallársele responsable por los daños ambientales, sufre la disminución en lo que recibe como justa compensación y, además, está expuesto a pagar por esos mismos costos en un proceso independiente dirigido a identificar a la persona responsable

---

[77] A esta valoración se le conoce como "as if remediated". No consiste en tratar la propiedad como "limpia", sino tasarla en la cantidad que valdría luego de subsanarse los daños ambientales identificados, incluyendo las posibles connotaciones negativas que pudieran persistir en la propiedad luego de subsanarse la contaminación. En ese sentido, se permite evidencia sobre contaminación para los únicos efectos de calcular cuál sería el valor de la propiedad luego de erradicarse la contaminación.

de causar la contaminación. En caso de ser este el responsable de causarla, en realidad estaría "pagando" dos (2) veces por esos daños; la primera vez mediante la reducción que sufre en la justa compensación, y la segunda vez mediante la acción independiente de daños ambientales.

Partiendo de lo anterior, se ha inferido que permitir la admisión de los costos de remediar contaminantes imposibilita la concesión de una compensación "justa" pues se estaría ignorando "the unfairness of forcing a property owner to sustain a greater financial loss than he would have otherwise sustained solely because the condemnor uses its eminent domain power to forcibly take that person's private property". *Íd.*, págs. 879-880. En contraste, aun cuando la exclusión de los costos de remediación intenta balancear los intereses del Estado y los del dueño expropiado, la efectuación de este método no ha estado exento de críticas. Tiene como deficiencia que solo considerar evidencia de contaminación y excluir prueba sobre los costos de remediarla, de cierta manera invita a la especulación y omite factores importantes que pudieran impactar significativamente el valor de la propiedad. Véase Michael L. Stokes, *Valuing Contaminated Property in Eminent Domain: A Critical Look at Some Recent Developments*, 19 Tul. Envtl. L.J. 221, 251-260 (2006).

II

En este caso, la Opinión del Tribunal resuelve que la evidencia de contaminación es admisible en un proceso de expropiación forzosa siempre que sea pertinente y se cumpla con las demás disposiciones de las Reglas de Evidencia. Según adelantado, coincido con la Opinión Mayoritaria en cuanto a que la Sala de Expropiaciones tiene jurisdicción para considerar aquella prueba de contaminación que sea pertinente para determinar el monto de justa compensación. Empero, considerando las distintas razones que en otras jurisdicciones han ocasionado la exclusión de esta prueba, difiero de la Mayoría por restringirse a expresar una norma muy amplia y general. Dada la competencia limitada conferida a la Sala de Expropiaciones, y por el riesgo que puede representar para la persona expropiada admitir prueba de contaminación, debió detallarse aún más la forma adecuada de evaluar este tipo de prueba.

Con el propósito de brindar mayor claridad sobre los elementos a servir de guía en el ejercicio de la función discrecional de la Sala de Expropiaciones en cuanto a la pertinencia de esta prueba, comienzo por señalar que deberá evaluarse, primeramente, cuándo surgió la contaminación. En el caso ante nos las partes debaten, *inter alia*, la admisibilidad de la evidencia de contaminación expuesta en el Informe preparado por el perito de la peticionaria, el Geólogo Sr. Omar Negrón Cabrera. La información sobre contaminación que presuntamente surge del Informe no forma parte del expediente original del Tribunal de Primera Instancia, pues

ese foro excluyó del proceso evidencia de contaminación. En consecuencia, tampoco aparece en el expediente apelativo.[78] No obstante, las partes la referencian repetidamente.

Sobre este particular, el Tribunal de Apelaciones concluyó que no se debía considerar la prueba de contaminación, incluyendo la que surgía del Informe preparado por el señor Negrón Cabrera, porque se presentó doce (12) años después de la peticionaria haber advenido titular de la propiedad. Por un lado, la peticionaria alegó que desde 2011, mientras el caso estaba en la etapa del descubrimiento de prueba, le notificó a la parte adversa su intención de utilizar prueba de contaminación. Expresó que el aludido Informe considera la existencia de al menos un estudio ambiental realizado en 2006, contemporáneo a la fecha de la expropiación. Mientras tanto, la recurrida expuso que, a pesar de basarse en un alegado estudio ambiental realizado contemporáneo a la fecha de expropiación, el perito hizo constar en su Informe que nunca recibió copia del mencionado estudio. Así también, las partes hacen referencia a un documento titulado "Environmental Site Investigation Delineation of the Presence of Hydrocarbon Related Residues Ponce Bay Land Property", cuya fecha de preparación fue noviembre de 2008. En esa fecha la propiedad ya había sido expropiada. La recurrida esbozó que la peticionaria entró en posesión de la propiedad en 2006 y que esta se afectó por el proyecto realizado por el Estado, pues se demolió una

---

[78] *Petición de Certiorari*, Apéndice, págs. 126(J)-(N).

estructura que existía al momento de la incautación. Además, planteó que, previo y posterior a la expropiación, otra entidad la ocupaba en calidad de arrendataria. Ante esto, arguyó que no podía defenderse adecuadamente ya que el comportamiento de la peticionaria "la despojó de la oportunidad de refutar los estudios de ésta y el estimado de costo".[79] Así, reiteró su solicitud de excluir la prueba de contaminación.

Si bien este Tribunal resuelve que la evidencia de contaminación es admisible para determinar el monto de justa compensación en un proceso de expropiación forzosa, no debe perderse de perspectiva que el valor a fijarse es aquel **al tiempo de la incautación**. Por ello, previo a admitir evidencia sobre contaminación y su efecto sobre la justa compensación, la Sala de Expropiaciones debe dilucidar si la alegada contaminación estaba presente en la propiedad a la fecha de la expropiación.[80] De no haberlo estado, esta no puede ser considerada ya que sería impertinente para determinar el justo valor de la propiedad a la fecha de la incautación. *A contrario sensu*, el foro sentenciador puede considerar evidencia ambiental si queda convencido de que la contaminación estuvo presente al momento de concretarse la incautación.

---

[79] *Alegato de la recurrida*, pág. 28.
[80] En este caso la expropiación ocurrió el 27 de octubre de 2006, pues la "transmisión del título absoluto de dominio y del derecho a tomar posesión del inmueble queda consumada tan pronto se radica la declaración de adquisición y entrega y se hace el depósito en corte de la suma estimada como compensación, sin que para ello sea necesaria una orden de la corte a ese efecto". *Autoridad Sobre Hogares de P.R. v. Corte*, 68 DPR 54, 65-66 (1948).

Superado lo anterior, entonces la Sala de Expropiaciones puede sopesar el efecto que tiene la evidencia de contaminación sobre la justa compensación, tomando en cuenta factores como: el valor de la propiedad si no estuviera contaminada; su valor mientras está contaminada; la proyección del valor considerando cualquier estigma que pudiera persistir tras limpiarse la contaminación; y el efecto que tienen los costos de remediación sobre el precio de venta, si alguno. El criterio rector en este análisis debe ser cómo la contaminación y los costos de remediación afectan el valor en el mercado de la propiedad, si es que lo afectan.

En tal sentido, me uno al razonamiento conducente a la admisibilidad tanto de la prueba de contaminación sobre la propiedad como de los costos para remediarla, pues aun considerando los argumentos que abogan por la exclusión de esta prueba, "[i]t blinks at reality to say that a willing buyer would simply ignore the fact of contamination, and its attendant economic consequences, including specifically the cost of remediation, in deciding how much to pay for property". Northeast Ct. Economic Alliance, Inc. v. ATC Partnership, 776 A.2d 1068, 1080, 256 Conn. 813, 833-34 (Conn.,2001). Sin embargo, distinto a la Mayoría, hubiera delimitado la admisibilidad de esta prueba similar a como lo hizo el Tribunal Supremo de Florida en *Finkelstein v. Dept. of Transportation*, 656 So.2d 921 (Fla.1995). Con discernimiento de las peculiaridades del procedimiento de expropiación forzosa, ese Tribunal permitió la litigación de

asuntos relacionados a la contaminación de la propiedad mediante la implantación de un análisis encaminado a reducir el perjuicio causado a la persona expropiada y a precaver tornar el proceso en uno altamente técnico en cuanto a temas ambientales.

En principio, el Tribunal Supremo de Florida dictaminó que la presencia de contaminación en una propiedad es pertinente para la determinación del justo valor, pero aclaró que solo es pertinente como explicación de la razón por la cual ocurrió una alteración en el valor de la propiedad. *Finkelstein v. Dept. of Transportation*, supra, pág. 924. Por ello, permitió la admisibilidad de la evidencia de contaminación cuando exista "sufficient factual predicate upon which to conclude that the contamination does affect the market value of the property taken". *Íd.*, pág. 922. Esto implica que no puede conjeturarse que la presencia de contaminación en la propiedad acarrea una diminución en su valor, sino que debe existir una base fáctica para llegar a tal conclusión. Al enmarcar la evaluación de la prueba de esta forma, sensatamente se reconoció que **"the focus of the opinion testimony must be value. Evidence of contamination, because of its prejudicial nature, should not be a feature of a valuation trial beyond what is necessary to explain facts showing a reduction in value caused by contamination"**. (Énfasis suplido). *Íd.*, pág. 925. Bajo el mencionado análisis, en esencia, la prueba de contaminación en los procesos de expropiación forzosa es pertinente, y por

tanto admisible, solo para explicar los hechos que dan base para concluir que la contaminación influye sobre el valor de la propiedad. Esta ponderación pretende preservar el enfoque del procedimiento en la valoración de la propiedad y evitar que, mediante el amplio desfile de prueba de contaminación, esta desvirtúe el proceso al convertirse en la discusión protagónica. Así, se fomenta eludir que el proceso se entremezcle o sirva de preámbulo a un pleito independiente dirigido a identificar la persona responsable de causar la contaminación. Por coincidir con dicho fin, hubiera formulado semejante análisis.

Por último, me parece que debió también especificarse la extensión del examen realizado en torno a los costos de remediación. La peticionaria aduce que debe restársele a la justa compensación la cantidad por concepto de la remediación de los contaminantes ambientales. No obstante, la contemplación de los gastos para remediar la contaminación no es tan sencilla como simplemente reducir, dólar por dólar, esta cantidad del monto de la justa compensación.

El trato brindado a los costos de remediación es importante pues cuando se está ante una venta ordinaria y voluntaria, el dueño de la propiedad tiene la habilidad de reclamarle a quien causó la contaminación antes de vender y así no cargar con esos gastos. En caso de que la contaminación fuera autoprovocada, tiene la potestad de repararla total o parcialmente antes de venderla. Más aun, sin importar quién causó el daño, el vendedor puede negociar para que el

comprador cargue con esos gastos, sin tener necesariamente que disminuir el precio de venta de la propiedad. No es irrazonable que un comprador sofisticado, reconociendo que estamos ante una parcela valorada en los millones de dólares, conozca los defectos de una propiedad y aun así decida adquirirla por ser esencial para los planes de desarrollo que tiene, por su localización, acceso a determinadas personas u otras características intangibles que no se traducen a meros costos de remediación.

Reducirle los costos de remediación a la cantidad del justo valor pudiera llegar al absurdo de que el Estado pague cero dólares ($0.00) por adquirir la propiedad si los costos de remediación se estiman en una cantidad que sobrepasa el valor en el mercado.[81] Esto sin duda no "colocar[ía] al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad". *Amador Roberts v. ELA*, 191 DPR 268, 278-79 (2014). A su vez, pudiera representar una ganancia para el Gobierno en detrimento de la persona expropiada si luego de recibir la propiedad en descuento se determina que esta última fue responsable de ocasionar la contaminación,

---

[81] A modo de ejemplo, llamamos la atención a la situación ocurrida en un caso resuelto en el estado de Michigan:

> [T]he district court concluded that Anda was not entitled to receive any damages for the taking of his property. The court reached this conclusion because "the cost of remediation of the environmental contamination of the subject property exceeded what would otherwise have been its fair market value, and its fair market value was $0.00 as of the date of the taking". *Moorhead Economic Development Authority v. Anda*, 789 N.W.2d 860, 871 (Minn.,2010).

quedando obligada a la indemnización de los costos de remediación. Eso precisamente es lo que los tribunales excluyendo este tipo de prueba intentan evitar: el riesgo a una doble incautación.[82] Por lo tanto, la reducción en el valor en el mercado no debe traducirse, sin más, a los costos de remediación. Si se toman en cuenta, deben ser solo un factor adicional a considerar para determinar cómo estos disminuyen el valor de la propiedad, si es que en efecto así lo hacen.[83]

Cuando la prueba de costos de remediación se evalúa de la manera indicada, se reduce el riesgo de la llamada doble incautación puesto que la cuantía por la cual se reduce el justo valor en el mercado de la propiedad es por concepto distinto a la cuantía de los gastos incurridos en remediar la contaminación. En *Silver Creek Drain Dist. v. Extrusions Div., Inc.*, 468 Mich. 367, 380-81 (Mich., 2003), la distinción entre estas partidas se expresó de la manera siguiente: "the trial court made its just-compensation determination not on the basis of [...] liability for cleanup costs, but on the basis of the effect of contamination on the

---

[82] Existen ocasiones en las que este riesgo no es especulativo, particularmente cuando el Estado ya inició, indica que iniciará o se reserva el derecho de iniciar una acción independiente para recobrar los costos de remediación. Por tanto, la Sala de Expropiaciones debe examinar este riesgo caso a caso.

[83] En otras jurisdicciones se ha tomado en cuenta la disponibilidad de fuentes externas que cubran los costos de remediación y el efecto que ello tiene sobre el precio de venta de una propiedad contaminada. *Finkelstein v. Dept. of Transportation*, 656 So.2d 921, 923-924 (Fla.1995) ("[W]e agree with the trial court's decision that testimony as to remediation costs was not relevant to any issue to be determined in this valuation proceeding. [...] We limit our holding in this regard to the facts of this case, in which there was a program for reimbursement of the remediation costs. We do not decide whether remediation costs would be relevant in a valuation proceeding which involved property for which such reimbursement was not available").

parcel's fair market value. This was an appropriate way to consider contamination in a just-compensation proceeding [...]". En ese caso, la diferencia entre las mencionadas partidas era evidente ya que el "actual cost of remediation [...] was approximately $2.3 million, while the loss of value caused by the contamination was found by the trial court to be $237,768". *Íd.*, pág. 381 n.16. Así, no se debería "simply reduce the amount of the award by the cost of the remediation efforts taken by the State", sino que el tribunal debe considerar "relevant evidence as may be offered by both sides on the issue of fair market value, including the nature and extent of the contamination, the reasonable measures required to correct the problem, the reasonable cost of those measures, and the effect of all of this on the property's fair market value". *State v. Brandon*, 898 S.W.2d 224, 228 (Tenn. App. 1994). Al examinar la prueba sobre costos de remediación de esa manera, el riesgo de doble incautación disminuye pues si posteriormente el expropiado debe indemnizar al Estado por los costos de remediación incurridos, la reducción sufrida en la cantidad de justa compensación representó solo el **efecto** que la existencia de esos costos tenía sobre el precio de la propiedad en el mercado de bienes raíces y **no la cantidad a indemnizarse** por subsanar la contaminación habida en ella.

Me parece que los parámetros previamente enunciados les servirían de guía a los tribunales para ejercer prudentemente su facultad discrecional en la evaluación de la pertinencia

de cierta prueba de contaminación en el contexto de un proceso de expropiación forzosa. Tomándolos como base, los tribunales deben siempre tener presente asegurar cumplir con el propósito de este proceso: determinar el justo valor de la propiedad, considerando su mejor y más provechoso uso a la fecha de expropiación. Me reitero en que debería cumplirse con el análisis de pertinencia esbozado previamente para atender las preocupaciones válidas que militan a favor de la exclusión de prueba de contaminación en estos procesos.

## III

Por las razones antes esbozadas, concurro en parte y disiento en parte con la Opinión Mayoritaria.


Mildred G. Pabón Charneco
Jueza Asociada